UNITED STATES DISTRICT COURT FOR MIDDLE DISTRICT
OF FLORIDA, JACKSONVILLE DIVISION

JOSEPH ROGERS
    Plaintiff,

v.

CASE NO.: To Be Assigned
3:20 cv 725-J-34 MCR

**CENTURION OF FLORIDA, LLC.,**
Current health care provider for the
Florida Department of Corrections, et. Al.,

and **CORIZON OF FLORIDA**,
former health care provider for the
Florida Department of Corrections, et al.,
    Defendant(s)

## 42 U.S.C. § 1983 CIVIL RIGHTS COMPLAINT
## DECLARATORY AND INJUNCTIVE RELIEF
## JURY TRIAL SOUGHT

### I. PLAINTIFF

Name of Plaintiff: Joseph Rogers
Inmate Number: DC # 032845
Prison or jail: Union Correctional Institution
Mailing Address: P.O. Box 1000
    Raiford, Florida 32083-1000

### II. DEFENDANTS:

(1) **CENTURION OF FLORIDA, LLC,**
Official Position: Current Contract Medical Provider for The FDC
Paddock Park Prof. Bldg. 3200 S.W. 34th Ave. Bldg. 700, Suite 701,
Ocala, Fla. 34474

(2) **CORIZON OF FLORIDA,** Former health care provider for the Florida
Department of Corrections, 12647
Olive Blvd., St. Louis, Missouri 63141

1

(3) **MARK S. INCH**
Official Position: Secretary, FDC
501 S. Calhoun St., Tallahassee, Fla. 32399-2500
Official Capacity, Declaratory & Injunctive Relief

## III. EXHAUSTION OF ADMINISTRATIVE REMEDIES

Exhaustion of administrative remedies is required prior to pursuing a civil rights action regarding condition or events in any prison, jail, or detention center. 42 U.S.C. § 1997e(a).
Plaintiff is warned that any claims for which the administrative grievance process was not completed prior to filing this lawsuit may be subject to dismissal. Plaintiff has exhausted all available administrative grievances. Defendant Inch possesses all grievances filed in this matter.

## IV. PREVIOUS LAWSUITS

NOTE FAILURE TO DISCLOSE ALL PRIOR CIVIL CASES MAY RESULT IN THE DISMISSAL OF THIS CASE. IF YOU ARE UNSURE OF ANY CASES YOU HAVE FILED, THAT FACT MUST BE DISCLOSED AS WELL.

 A. Have you initiated other actions in <u>state court</u> dealing with the same or similar facts/issues involved in this action.
   Yes ( )   No (XXX)
  1. Parties to previous action:
   (a) Plaintiff(s): N/A
   (b) Defendant(s) N/A
  2. Name of judge: N/A  Case #: N/A
  3. County and judicial circuit: N/A
  4. Appropriate filing date: N/A
  5. If not still pending, date of dismissal: N/A
  6. Reason for dismissal: N/A
  7. Facts and claims of case: N/A
  (Attach additional pages as necessary to list state court cases.)
B. Have you initiated other actions in federal court dealing with the Same or similar facts/issues involved in this action?
   Yes ( ) No (XX)
  1. Parties to previous action: N/A
   (a) Plaintiff(s): N/A
   (b) Defendant(s) N/A
  2. Name of Judge: N/A
  3. County and judicial circuit: N/A

    4. Appropriate filing date: N/A
    5. If not still pending: N/A
    6. Reason for dismissal: N/A
   Facts and claims of case: refusal to treat Hep "C", Policy and Practice of non-treatment, 8th Amendment violation.
(Attach additional pages as necessary to list state court cases.)
  C. Have you initiated <u>other actions</u> (besides those listed above in Questions (A) and (B)) in either state or federal court that relate to the fact or manner of your incarceration (including habeas corpus petitions) or the conditions of your confinement (including civil rights complaints about any aspect of prison life, whether it be general circumstances or a particular episode, and whether it involved excessive force or some other wrong)?
    Yes (X)  No ( ) Please see pages 4"A"
If yes, describe each action in the space provided below. If more than one action, describe all additional cases on a separate piece of paper, using the same format as below.
    (a) Plaintiff(s): Joseph Rogers
   (b) Defendant(s) State of Florida, Unknown
   2. Name of Judge: Unknown
   3. County and judicial circuit:
    4. Approximate filing date: Unknown
    5. If not still pending, date of dismissal: N/A
    6. Reason for dismissal: Per Curiam Affirmed
    7. Facts and claims of case: Documents lost, cannot remember.
    1. Parties to previous action: Joseph Rogers, state of Florida
    (a) Plaintiff(s) Joseph Rogers
    (b) Defendant(s) Respondent: Secretary Fla Dept. of Corr. Crosby
    1. Case No: Unknown
    2. Name of Judge: Unknown
    3. Middle District Orlando, Florida
    4. Approximate filing date: 2001 Jacksonville
    5. Incorporated in another Class Action
    6. Reason for dismissal. N/A
    7. Facts and claims of case: Inmate Trust Fund.
    1. Defendant(s) Dept. of Corrections.
    2. Name of Judge: N/A
    3. County and judicial circuit: N/A
    4. Approximate filing date: March 2001.
    5. Unknown
    6. Reason for dismissal: N/A
    7. Facts and claims of case:
  D. Have you ever had any actions in federal court dismissed as frivolous,

malicious, failing to state a claim, or prior to service? If so identify each and every case so dismissed:
        Yes ( )     No (XXX)

**OVERVIEW**

Plaintiff's now near fatal liver disease results from Hepatitis "C" condition for which Defendants have failed to treat in a timely manner. Defendant **Centurion** utilized a simple policy and practice to deny care by institutional physician. Deprivation of standard of care was then ratified by Secretary Jones and continued by Secretary Inch, via IISC positions {Impaired Inmate Services Coordinator}. In this instance, Plaintiff was not informed he needed care by Corizon medical which for years even after Centurion's role as health care provider, was not provided as soon as should have been. Such matters as lying about availability of care and willful concealment of FBOP evaluation and treatment guidelines, underline reprehensible conduct by Defendants. Plaintiff was not treated in a timely fashion even after Hoffer v. Jones and Defendant Centurion's realization that denial of care was no longer possible.

Defendant's policy to defer treatment for Plaintiff's hepatitis "C" was on behalf and in the stead of corporate positions regarding employment with contract health provider. Each of these Defendant's by vestige of their positions, were charged with obligation to prevent the actions and inactions of these claims. Facts well plead, medical and grievances records produced from FDC, will clearly flesh out the practice of policy enactment. The denial of care, in favor of profit; results in Plaintiff's torment and sorrow. Ignoring the requirement to treat

Plaintiff's Hepatitis "C" in a timely fashion has resulted in scarring of his liver and Plaintiff although not cured of the infection, is an F3 on the METAVIR scale. Corizon and Centurion's deliberate choice to ignore the requirement of Plaintiff's care by administering DAA's was a "regulatory measure." Such a policy and practice was covered up by Secretary Jones and the cover up has been continued by Secretary Inch, via IISC positions as regards health care grievances, "throw them away they can't prove it" {HCGs}. Finally, no dietary considerations exist nor supplements provided for Plaintiff, nor are their vitamins of worth provided or purchasable by Plaintiff.

## V. STATEMENT OF FACTS

(1) Plaintiff is currently incarcerated at Union Correctional Institution and at all times relevant hereto was under the care, custody and control of the State of Florida, Department of Corrections. Plaintiff is currently 71 years of age and has been incarcerated since 1993. At the times relevant hereto, Plaintiff suffered from Hepatitis "C" and the disease had escalated to such a level that Plaintiff is now rated as an F3 on the METAVIR scale. The amount of liver scarring a patient has is usually measured on the METAVIR scale. On this scale, a person can be classified F0 (no fibrosis), F1 (mild fibrosis), F3 (severe fibrosis), or F4 (cirrhosis). The rate at which patients progress along this scale differs among the population. Defendants. Corizon and Centurion were well aware of these facts in relation to Plaintiff's condition when utilizing the policy and practice not to treat Plaintiff in a

timely fashion. Plaintiff is currently under the care of Defendant, Centurion, via Defendant Inch.

(2) Under the June 2014, FBOP Guidelines, adopted by the CDC, patients were supposed to be prioritized for triple drug therapy based upon the advancement of hepatic fibrosis, or cirrhosis, whether the patient is a liver transplant recipient or has a HIV co-infection, or whether the patient has a comorbid medical condition associated with HCV, such as certain types of lymphomas. The degree of fibrosis may be determined in several ways. The AST-to-platelet ratio index ("APRI") is the FBOP-preferred method for non-invasive assessment of hepatic fibrosis and cirrhosis. Liver biopsies and abdominal ultrasounds in this time period could also used to identify findings consistent with cirrhosis. Although the APRI score is useful in most cases, it is not an exact predictor of cirrhosis. Sometimes patients with high APRI scores show no signs of fibrosis or cirrhosis on ultrasounds or biopsies. In June 2014, the FBOP recommended prioritizing patients who had APRI scores of 1.0 or greater, or whose APRI score was between 0.7 and 1.0, along with other findings suggestive of advanced fibrosis. Under these guidelines, Plaintiff's need for treatment was apparent when Defendant Centurion became Plaintiff's health care provider.

(3) Plaintiff was informed in 6-4-2014, by (then) Corizon, Medical staff that Plaintiff suffered from Hepatitis C, a very serious infection that would advance to liver disease. It was physician's assessment that delay in drug treatment would exponentially increase in the odds against Plaintiff's success and result in liver

damage. In 6-4-2014, Doctor in accordance with then Corizon's protocol, implemented written application in which he/she recommended Plaintiff Rogers to be treated with the new DAA's drugs. The physician assured Plaintiff that the DAA drugs were new drugs for treating Hepatitis C infections in adults, which had a high potency against the disease, and consequently very expensive. Doctor Lugo Perez, further explained this new generation of 'breakthrough' drug treatment, viz, the Hepatitis C standard of care, would cure Plaintiff's infection in three months from its inception.

(4) In July 2015, the FBOP revised its HCV Guidelines to reflect the availability of *new* treatments and established the *new* standard of care. The FBOP provided that certain cases are at higher risk for complications or disease progression and require more urgent consideration for treatment. The patients at Level 1, or highest priority, are those with known decompensated cirrhosis, liver transplant candidates or recipients, patients with hepatocellular carcinoma, those with comorbid medical conditions associated with HCV, those taking immunosuppressant medications, and newly incarcerated inmates already receiving treatment. Patients at Level 2, or high priority, include those with APRI scores greater or equal to 2.0, those with advanced fibrosis on a liver biopsy. Patients at Level 3, or intermediate priority, include those with APRI scores between 1.5 and 2.0, those with Stage 2 fibrosis on a liver biopsy, those with diabetes mellitus, and those with porphyria cutanea tarda. Patients at Level 4, or routine priority, are those with Stage 0 to stage 1 fibrosis on liver biopsy, and all other cases of HCV infection that meet the criteria for treatment. Under these guidelines, Plaintiff's need for treatment was apparent. Plaintiff was not provided treatment by Corizon LLC., due to cost. Each Defendant acted per custom, policy, as plead *infra*.

(5) In April 2016, the FBOP revised its HCV Guidelines to reflect the availability of three *new* treatment drugs. The 2016 Guidelines did not change the way APRI scores are used to prioritize patients for treatment. Plaintiff still had not

received the treatment despite have been recommended in 6-27-2014, by Corizon LLC physician, Dr. Melendez. Under these 2016 guidelines, Plaintiff's need for treatment was apparent. Plaintiff was intentionally ignored and then denied treatment by Corizon LLC., at that time. Corizon acted per custom, policy not to treat due to cost.

(6) In August 24, 2016, Defendant Centurion replaced Corizon as FDC health care provider. Defendant Centurion was aware of the number of HCV affected prisoners and the policy and custom left in place by Corizon not to evaluate and or treat per the guidelines of #2-5, *supra*. Centurion was aware of the FDC grievance process insulating then Corizon, then Centurion, via FDC Impaired Inmate Services Coordinators {IISC} and other agents yet identified. Centurion immediately agreed to the "Corizon method," that all HCGs grieving deprivation of care would be summarily, boiler plate denied, or put in the garbage can or shredder as is a custom policy for DOC. Both Corizon and Centurion had complicit approval by Defendant Jones (FDC) to conceal existence of and not evaluate or treat per #2-5. Moreover, medical code listings for those infected with Hep C and critically ill offenders were manipulated, by concealing the number of those infected, as well as Plaintiff's condition. This policy and practice was based upon the cost of the evaluation and treatment regimes and FDC agreed to the same. This was a factor in the contract price for prison health care which would have been sizably more, {less profit} had adherence to #2-5 been required. Indeed, Corizon quit. The Court may take judicial notice of Copeland v. Jones et al., 4:15-cv-00452-RH-CAS, "hernia settlement," as well as Hoffer v. Jones, 2017 U.S. Dist. LEXIS 194544 (U.S.D.C. Tall. 11-17- 2017), regarding both companies individual and joint ventures not to treat to increase profit. Defendant Centurion was employed by way of a no bid contract.

(7) Corizon's Medical personnel instituted protocol for treatment of Hepatitis C that encompassed non-treatment modalities including an A.T.P.

Alternatiave Treatment. Plan that actually parceled Aspirins and Water Pills in lieu of much more expensive DAA drugs.

(8) Appearing by way of no bid contract Defendant <u>Centurion</u> replaced Corizon's contract in August 24, 2016, becoming FDC health care provider. Corizon's contract contained the proviso re chronic diseases on page 8, ¶2. The relevant section provides:

> "Intervention for inmates with chronic disease must meet generally recognized standard of care."

The <u>A</u>lternative <u>T</u>reatment <u>P</u>lan which involved aspirins and water pills was a mock treatment and departed in so stark a manner from "recognized standard of care" <u>mandated</u> by contract, that it constitutes deliberate indifference. This indifference became <u>Centurion's</u> format with approval of Secretary Jones.

(9) The denial of Corizon's care then gave way to <u>Centurion's</u> denial--delay of acceptable treatment for such an obviously serious medical need. Plaintiff on several occasions encountered Dr. Perez, then an employee of Defendant <u>Centurion,</u> and was told that care by DAA's was not necessary, but that Plaintiff was being monitored and would be informed if treatment was necessary. Plaintiff was informed by Defendant Corizon Doctor Perez, that if Plaintiff's name was on a treatment list for DAA's, Plaintiff would be contacted when his turn had arrived. It was apparent to Dr. Perez, and all other Corizon employees that the delay would exacerbate the infection and escalate liver scarring. The decision to delay treatment was medically unjustified in violation of standards of care and was fostered by <u>Centurion's</u> policy and practice not to spend money on DAA's. Defendant <u>Jones</u>-FDC was well aware of the policy and practice and permitted and assisted in implementation of the same via FDC established custom of denying all health care grievances or put in the garbage can or shredder as is a custom policy for DOC {HCGs}, by created positions of impaired inmate services coordinator {IISC}et.

9

al. During this period, one Ebony O. Harvey, repeatedly appears in FDC, HCG records as IISC, establishing "boiler plate" pattern of denials and "don't call us we'll call you" responses. In this instance, Plaintiff' filed his formal grievance dated 12-2017, but never received an answer. Then he was suddenly called in 2018 saying that he was going to be given DAA's for treatment.

(10) When Defendant Centurion became FDC health care provider, up to 90% of the persons employed were those previously employed by Corizon LLC. Defendant Centurion was at the time of their no bid contract award, aware of the large numbers of HCV infected prisoners, and the obligation to provide the FBOP—CDC standards of care. Nonetheless, Defendant Centurion would not spend the funds to treat Plaintiff with DAA's and Defendant Jones had an agreement with persons yet named, not to require Defendant Centurion to purchase DAA's and not to request funds from the State to purchase DAA's.

(11) As a result of the inescapable judicial mandate to treat with DAA's, beginning on 11-29-2017 Plaintiff was provided the DAA treatment by Defendant Centurion and the same was completed in September, 2018. Plaintiff's liver condition has suffered and has become worse and now life-threatening. Centurion's failure to treat in a timely fashion, *inter alia,* has ultimately led to needless and extreme abdomen pain, emotional distress, fatigue and overall decreased life-style, and a severe loss of weight. Plaintiff once weighed 175 pounds and stood five foot 11 inches in height. As of 2016 weight has plummet to only 144 lbs. Plaintiff suffers from severe pain in his abdomen daily. Severe fatigue on a daily basis. He is apprehensive about and fearfully anticipates, liver failure. He suffers from extreme loss of sleep. As a result of the unreasonable delay, August 22, 2016-- to November, 2018, Plaintiff's health underwent considerable erosion. The harm is already irreparable in the sense that it is beyond remediation. As early as 2009, various texts accepted by the medical community bore witnesses to the advantages of prompt treatment. See for example: Living

With Hepatitis "C" 5th Edition, Mr. Gregory T. Everson, M.D., F.A.C.P. 2009, pg. #160, stating in sum, "If you had advanced fibrosis or cirrhosis, you are at risk for liver cancer even if you are a sustained responder and no longer have hepatitis C." Additionally, "[p]atients with advanced fibrosis or cirrhosis run a considerable lifetime risk of developing hepatoma..." (id. at pg.#199) "As blood backs up in the spleen, cells become trapped and are destroyed—resulting in a decrease in platelets, red cells, and white cells."

**(11)** When Defendant <u>Centurion</u> assumed Corizon's contract on August 24, 2016, it was apparent that Plaintiff had been interviewed by Medical-Service Contractor Physician, Doctor Perez, on about 7-7-2016, confirmed. Doctor Perez noted that timely course of treatment for Inmate Roger's Hepatitis C was necessary. At that time, as well as when Defendant <u>Centurion</u> took over, their existed a list of prisoners that required immediate treatment via DAA's. It is without dispute that Plaintiff's name was on that list. See #9, *supra*.

**(12)** Defendant Centurion, in conjunction with Defendant <u>Jones</u> via policy and practice intentionally did not provide treatment to Plaintiff and utilized the "Corizon Method" of mock monitoring Plaintiff's infection, until Plaintiff's liver was damaged beyond repair.

## **CENTURION OF FLORIDA, LLC.,**

### **(13) CENTURION OF FLORIDA, LLC**

Plaintiff incorporates by reference paragraph # 1-12, *supra* and states, this Defendant in its official capacity pledged competent health care of Florida prisoners upon assuming the Corizon LLC contract with Defendant <u>Jones</u>, FDC, State of Florida, via a no-bid award. This Defendant understood that statutory obligation of care existed via special obligation of Defendant <u>Jones</u>, per F.S. 20.315 (3). In so contracting, Defendant pledged to provide care within accepted medical norms and not to deprive needy prisoners of critical care and because of cost. This for profit Defendant was well aware of the thousands of HCV infected

11

FDC prisoners as well as the standards of care plead *supra*, chose to disregard obligation to provide critical care for serious medical needs of plaintiff, via policy, practice and custom, until Plaintiff's liver was irreparably damaged. This motivation force was not to spend money, thusly increasing profits. As a result this Defendant rewarded each of the Defendants (excepting Jones) with salary raises, bonuses and other incentives upon profit increases, in furtherance of advancement of the blind eye, no treatment policy, practice and custom. This policy and custom of operation umimpeded and ratified in furtherance by Defendant Secretary Jones, IISC positions. When the obligation to care was taken over by Defendant Centurion, it had already reached agreement with the defendants of paragraphs 13-2__, *infra*, not to treat infected inmates-Plaintiff, due to cost. This conduct violated Plaintiff's clearly established 8th Amendment guarantee to be free from cruel and unusual punishment. This defendant's actions and inactions were under the color of state law and in the furtherance of profit per policy and practice.

### (14) CORIZON OF FLORIDA , LLC

Plaintiff incorporates by reference paragraph # 1-13, *supra* and states, this Defendant in its official capacity pledged competent health care of Florida prisoners upon assuming the Corizon LLC contract with Defendant Jones, FDC, State of Florida. This Defendant understood that statutory obligation of care existed via special obligation of Defendant Jones, per F.S. 20.315 (3). In so contracting, Defendant pledged to provide care within accepted medical norms and not to deprive needy prisoners of critical care and because of cost. This for profit Defendant was well aware of the thousands of HCV infected FDC prisoners as well as the standards of care plead *supra*, chose to disregard obligation to provide critical care for serious medical needs of plaintiff, via policy, practice and custom, until Plaintiff's liver was irreparably damaged. Defendant was well aware of the thousands of HCV infected FDC prisoners as well as the standards of care plead *supra*, chose to disregard obligation to provide critical care for serious medical

needs of plaintiff, via policy, practice and custom, until Plaintiff's liver was irreparably damaged. This motivation force was not to spend money, thusly increasing profits. As a result this Defendant rewarded each of the Defendants (excepting Jones) with salary raises, bonuses and other incentives upon profit increases, in furtherance of advancement of the blind eye, no treatment policy, practice and custom. This policy and custom of operation umimpeded and ratified in furtherance by Defendant Secretary Jones, IISC positions. When the obligation to care was taken over by Defendant Centurion, it had already reached agreement with the defendants of paragraphs13-2__, *infra*, not to treat infected inmates-Plaintiff, due to cost. This conduct violated Plaintiff's clearly established 8th Amendment guarantee to be free from cruel and unusual punishment. This defendant's actions and inactions were under the color of state law and in the furtherance of profit per policy and practice.

(15) **JULIE L.JONES**, Former Secretary, FDC, Official Capacity,

And **MARK S. INCH**, Current Secretary, FDC, Official Capacity.

Ms. Jones and now Mr. Inch, as Secretary of the FDC, is directly responsible for Plaintiff's health care and could not abrogate that responsibility as established by F.S. 10.315 (3), by contracting the same to Corizon and then Centurion. Ms. Jones knew or should have known just as Mr. Inch now knew or should have known that the CDC changed treatment guidelines for HCV in 2014-2016, requiring Defendants Corizon and then Centurion to comply with updated mandate to evaluate and treat Plaintiff and other HCV infected inmates. Ms. Jones knew that Defendant Michelle Schouest, IISC, and other designees, acted in furtherance of plan, scheme and policy of Defendants Corizon and Centurion to "boiler plate" denials of health care grievances (HCG) in defiance to FBOP evaluation and treatment guidelines, including DAA's due to cost. Ms. Jones knew, just as Mr. Inch now knows, or should know that the Defendants named in this complaint, would defy the requirement to treat Plaintiff with DAA's when they were awarded

a no bid contract. Defendant Jones, FDC, intentionally declined to request from the state the necessary funds to treat infected prisoners –plaintiff and refused to require the defendants named herein to treat Plaintiff. This political agreement deliberately concealed the existence and availability of DAA's and did so with ill will, spite and no concern for humane treatment. Defendant Jones, and now Mr. Inch, did this in furtherance of profit for Defendant Centurion as Secretary Jones knew that if demand for mandated evaluation and care was asserted, Centurion would back out. Thusly, a political allegiance with person(s) yet identified was agreed to that demand for treatment would not be available. Ms. Jones knew, and now Mr. Inch knows, that the no-bid award of health services to defendant Centurion would exclude care for HCV infected prisoners-Plaintiff. Ms. Jones, was aware, and now Mr. Inch is also aware that the profit company had an agreement with a high ranking State official to develop FDC policy and practice, to routinely deny evaluation and care, in furtherance of profit. This conduct violates Plaintiff's 8th Amendment guarantee to be free of cruel and unusual punishment.

## VII. RELIEF REQUESTED:

**COMPENSATORY DAMAGES**

**Corizon and Centurion**

Plaintiff seeks compensatory damages in the amount of One million dollars from both Corizon and Centurion, each individually.

**INJUNCTIVE AND DECLARTORY RELIEF**

**Julie L. Jones, and Mark S. Inch,** Plaintiff seeks injunctive relief for (recommendation for liver transplant) ameliorative care, including pain medications, [all to be determined].

As for declaratory relief of Secretary Jones, and now Secretary Inch, Plaintiff prays that order enter finding that FDC acted in concert with Centurion and is still acting in concert with Corizon not to advise prisoners of the 2014-2016 FBOP-CDC guideline change and in doing so, ultimately denied Plaintiff

mandated evaluation and care until it had damaged Plaintiff beyond repair. That FDC knew at the time of the award of the no-bid contract with Defendant Centurion, that funds would not be provided for treatment with Centurion and that per political aliegance with person(s) yet unnamed would not be solicited on behalf of the affected prisoners. That FDC acted in concert with Centurion to deny care and furtherance of profit and without regard to humane, mandated care. That the conduct of each Defendant herein individually and collectively has violated Plaintiff's 8th Amendment guarantees to be free from cruel and unusual punishment.

**Prevailing party fees and cost.**

I declare under penalty of perjury that I have read the above and that the foregoing statements of fact, including all continuation pages, are true and correct. Dated this 30th day of June, 2020.

/s/ Joseph Rogers
Joseph Rogers DC# 032845
Union Correctional Institution
P.O. Box 1000
Raiford, Florida 32083-1000

15

## Mailing Certificate

I certify under penalty of perjury that this complaint was provided to Union C.I. Correctional Staff for mailing to: Clerk of Court, United States District Court, Middle District of Florida, Jacksonville, Florida at 300 North Hogan Street, Suite 9-150 Jacksonville, Florida 32202-4271, on this 30th day of June, 2020.

/s/ Joseph Rogers
Joseph Rogers DC# 032845
Plaintiff pro se