UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

JOSEPH ROGERS,

      Plaintiff,

v.                        Case No. 3:20-cv-725-MMH-MCR

CENTURION OF FLORIDA, LLC,
et al.,

      Defendants.

---

## ORDER

### I. Status

Plaintiff Joseph Rogers, a former inmate of the Florida penal system,[1]
initiated this action on June 30, 2020, by filing a pro se Civil Rights Complaint
(Complaint; Doc. 1)[2] pursuant to 42 U.S.C. § 1983. Rogers is proceeding on a
second amended complaint (SAC; Doc. 27) with exhibits (Doc. 27-1), filed on
February 23, 2022. In his SAC, Rogers names as Defendants: (1) Ricky Dixon,
Secretary of the Florida Department of Corrections (FDOC); (2) Centurion of

---

[1] The Florida Department of Corrections' website shows Rogers was released
from custody on June 14, 2022. See Offender Search, Florida Department of
Corrections, (last updated June 14, 2022).

[2] For all pleadings and documents filed in this case, the Court cites to the
document and page numbers as assigned by the Court's Electronic Case Filing
System.

Florida, LLC (Centurion); and (3) Corizon Health, Inc. (Corizon).[3] Rogers alleges Defendants violated the Eighth Amendment when they allegedly created and implemented a cost-saving policy that sanctioned the delay of medically necessary treatment for Rogers' hepatitis c virus (HCV) infection. Rogers also contends that Defendants violated the Americans with Disabilities Act (ADA) and the Rehabilitation Act (RA) by delaying treatment for his HCV. As relief, Rogers seeks compensatory and punitive damages, as well as declaratory and injunctive relief.

This matter is before the Court on Dixon and Centurion's Motions to Dismiss. See Motion to Dismiss by Defendant Florida Department of Corrections (Dixon Motion; Doc. 48); Defendant Centurion of Florida, LLC's Motion to Dismiss (Centurion Motion; Doc. 55) (collectively "Motions"). Dixon also filed exhibits in support of the Motions. See Docs. 48-1 through 48-3. Rogers filed a response in opposition to Centurion's Motion. See Response (Doc. 66). He failed to respond to Dixon's Motion.[4] Defendants' Motions are ripe for review.

---

[3] On February 17, 2023, Corizon filed a Suggestion of Bankruptcy. See Doc. 70.

[4] Dixon filed his Motion on July 15, 2022. See generally Dixon Motion. After granting Rogers three extensions of time to respond, see Docs. 56, 61, 65, the Court ordered Rogers to file a response to the Dixon Motion by February 6, 2023, and cautioned "[i]f Rogers fails to respond by the deadline, the Court will consider Dixon's Motion to be ripe, and all briefing will be closed," Doc. 68 at 1.

## II. Plaintiff's Allegations[5]

In the SAC, Rogers alleges that Defendants Dixon, Corizon, and Centurion discriminated against inmates with HCV, including Rogers, in violation of the ADA; discriminated against inmates with HCV, including Rogers, in violation of the RA; and were deliberately indifferent to a serious medical need when they each enforced a policy that delayed necessary treatment for Rogers' HCV infection in violation of the Eighth Amendment.[6] SAC at 8.

As to the specific underlying facts supporting his claims, Rogers asserts that his HCV infection "was first discovered at the federal penitentiary [in] Atlanta Ga." SAC at 5. He states that he received treatment at Grady Memorial Hospital. Id. According to Rogers, the FDOC became aware of his HCV when he entered its custody on November 15, 1993. Id. He alleges that after that date, Defendants only conducted "lab work" and did not treat his HCV. Id. at 12. Rogers' HCV progressed to cirrhosis of the liver; however,

---

[5] Because this case is before the Court on Defendants Dixon and Centurion's Motions, the Court accepts the allegations in Rogers' SAC as true and construes them in the light most favorable to Rogers. Cinotto v. Delta Air Lines, Inc., 674 F.3d 1285, 1291 (11th Cir. 2012).

[6] To the extent Rogers also attempts to bring a claim under Florida Statutes section 825.102, the Court finds he does not state a claim for relief. That statutory section criminalizes abuse of the elderly and does not create a civil remedy for Rogers.

Defendants never informed him of its severity. Id. at 12-13. He contends that even when direct-acting antivirals (DAA) was recognized as "life-saving treatment" for HCV, Defendants never provided him with such treatment due to a cost-saving policy. Id. at 12. Rogers maintains Defendants created and implemented a policy of delaying DAA treatments for inmates with HCV based on the cost of the treatment. Id. at 8. However, he contends Defendants did not implement a similar policy for inmates with other serious illnesses. Id.

### III. Summary of the Arguments

In his Motion, Dixon contends that the Court should dismiss the claims against him for the following reasons: (1) Rogers failed to properly exhaust his available administrative remedies; (2) Dixon is entitled to Eleventh Amendment immunity; (3) Rogers fails to state Eighth Amendment, ADA, and RA claims upon which relief can be granted; and (4) the statute of limitations bars Rogers' claims. Dixon Motion at 4-19.

Next, Centurion argues that the Court should dismiss the claims against it for the following reasons: (1) Rogers failed to fully disclose his litigation history; (2) Rogers failed to exhaust administrative remedies; and (3) Rogers fails to state an Eighth Amendment, medical malpractice, negligence, or other claim upon which relief can be granted. Centurion Motion at 2-24. In his

Response to Centurion's Motion, Rogers argues the Court should not dismiss his claim for the following reasons: (1) he did not willfully omit parts of his litigation history, and (2) he did not have available administrative remedies. Response at 4-11.

## IV. Analysis

### A. Exhaustion of Administrative Remedies

#### 1. PLRA Exhaustion

The Eleventh Circuit Court of Appeals has held the exhaustion of administrative remedies by a prisoner is "a threshold matter" to be addressed before considering the merits of a case. Chandler v. Crosby, 379 F.3d 1278, 1286 (11th Cir. 2004); see also Myles v. Miami-Dade Cty. Corr. and Rehab. Dep't, 476 F. App'x 364, 366 (11th Cir. 2012) (noting that exhaustion is "a 'threshold matter' that must be addressed first") (citation omitted).[7] It is well settled that the Prison Litigation Reform Act (PLRA) requires an inmate wishing to challenge prison conditions to first exhaust all available administrative remedies before asserting any claim under 42 U.S.C. § 1983.

---

[7] The Court does not rely on unpublished opinions as binding precedent; however, they may be cited in this Order when the Court finds them persuasive on a particular point. See McNamara v. GEICO, 30 F.4th 1055, 1060-61 (11th Cir. 2022); see generally Fed. R. App. P. 32.1; 11th Cir. R. 36-2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

See 42 U.S.C. § 1997e(a); Porter v. Nussle, 534 U.S. 516, 532 (2002). While the Eleventh Circuit does not appear to have addressed the applicability of the PLRA to suits brought under the ADA or the RA, the language of § 1997e(a) is not limited to § 1983 claims, but also applies to challenges to prison conditions brought under other "Federal law[s]." 42 U.S.C. § 1997e(a). Notably, several courts that have considered the reach of the PLRA have concluded that its exhaustion requirement must be satisfied before a prisoner can pursue an ADA claim, such as the one asserted here by Rogers, in federal court. Green v. Thomson, No. 1:20-cv-19 (LAG), 2021 WL 7967925, at *5 (M.D. Ga. Sept. 9, 2021), report and recommendation adopted, No. 1:20-cv-19 (LAG) (TQL), 2022 WL 1042915 (M.D. Ga. Feb. 28, 2022) (collecting cases).[8] Because the reasoning of these courts applies equally to claims under the RA and the Court finds the reasoning persuasive, the Court applies the PLRA exhaustion requirement to all of Rogers' claims.

A prisoner such as Rogers, however, is not required to plead exhaustion. See Jones v. Bock, 549 U.S. 199, 216 (2007). Instead, the United States

---

[8] The Court notes that although decisions of other district courts are not binding, they too may be cited as persuasive authority. See Stone v. First Union Corp., 371 F.3d 1305, 1310 (11th Cir. 2004) (noting that, "[a]lthough a district court would not be bound to follow any other district court's determination, the decision would have significant persuasive effects.").

Supreme Court has recognized that "failure to exhaust is an affirmative defense under the PLRA[.]" Id. Notably, exhaustion of available administrative remedies is "a precondition to an adjudication on the merits" and is mandatory under the PLRA. Bryant v. Rich, 530 F.3d 1368, 1374 (11th Cir. 2008). Not only is there an exhaustion requirement, the PLRA "requires proper exhaustion." Woodford v. Ngo, 548 U.S. 81, 93 (2006).

> Because exhaustion requirements are designed to deal with parties who do not want to exhaust, administrative law creates an incentive for these parties to do what they would otherwise prefer not to do, namely, to give the agency a fair and full opportunity to adjudicate their claims. Administrative law does this by requiring proper exhaustion of administrative remedies, which "means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)." Pozo,[9] 286 F.3d, at 1024 (emphasis in original).

Woodford, 548 U.S. at 90. And, "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules." Id.

The United States Supreme Court has instructed that "[c]ourts may not engraft an unwritten 'special circumstances' exception onto the PLRA's exhaustion requirement. The only limit to § 1997e(a)'s mandate is the one

---

[9] Pozo v. McCaughtry, 286 F.3d 1022 (7th Cir. 2002).

baked into its text: An inmate need exhaust only such administrative remedies as are 'available.'" Ross v. Blake, 578 U.S. 632, 648 (2016). For an administrative remedy to be available, the "remedy must be 'capable of use for the accomplishment of [its] purpose.'" Turner v. Burnside, 541 F.3d 1077, 1084 (11th Cir. 2008) (quoting Goebert v. Lee Cnty., 510 F.3d 1312, 1322-23 (11th Cir. 2007)).

Because failure to exhaust administrative remedies is an affirmative defense, Defendants bear "the burden of proving that [Rogers] has failed to exhaust his available administrative remedies." Id. at 1082. In accordance with Eleventh Circuit precedent, a court must employ a two-step process when examining the issue of exhaustion of administrative remedies.

> After a prisoner has exhausted the grievance procedures, he may file suit under § 1983. In response to a prisoner suit, defendants may bring a motion to dismiss and raise as a defense the prisoner's failure to exhaust these administrative remedies. See Turner, 541 F.3d at 1081. In Turner v. Burnside we established a two-step process for resolving motions to dismiss prisoner lawsuits for failure to exhaust. 541 F.3d at 1082. First, district courts look to the factual allegations in the motion to dismiss and those in the prisoner's response and accept the prisoner's view of the facts as true. The court should dismiss if the facts as stated by the prisoner show a failure to exhaust. Id. Second, if dismissal is not warranted on the prisoner's view of the facts, the court makes specific findings to resolve disputes of fact, and should dismiss if, based

8

> on those findings, defendants have shown a failure to exhaust. Id. at 1082-83; see also id. at 1082 (explaining that defendants bear the burden of showing a failure to exhaust).

Whatley v. Warden, Ware State Prison, 802 F.3d 1205, 1209 (11th Cir. 2015). At step two of the procedure established in Turner, the Court can consider facts outside the pleadings as long as those facts do not decide the case and the parties have had sufficient opportunity to develop the record. Bryant, 530 F.3d at 1376; see also Jenkins v. Sloan, 826 F. App'x 833, 838-39 (11th Cir. 2020).

### 2. Florida's Prison Grievance Procedure

State law "determines what steps are required to exhaust." Dimanche v. Brown, 783 F.3d 1204, 1207 (11th Cir. 2015); see also Jones, 549 U.S. at 218 (stating that "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion"). The FDOC provides an internal grievance procedure for its inmates. See Fla. Admin. Code R. 33-103.001 through 33-103.018. Generally, to properly exhaust administrative remedies, a prisoner must complete a three-step sequential process. First, an inmate must submit an informal grievance at the institutional level to a designated staff member responsible for the specific problem. See Fla. Admin. Code R. 33-103.005. If the issue is not resolved, the inmate must submit a formal grievance at the institutional level. See Fla. Admin. Code R. 33-103.006. If the matter is

9

not resolved through formal and informal grievances, the inmate must file an appeal to the Office of the FDOC Secretary. See Fla. Admin. Code R. 33-103.007. However, under certain specified circumstances, an inmate can bypass the informal-grievance stage and start with a formal grievance at the institutional level. See Fla. Admin. Code R. 33-103.005(1); 33-103.006(3). Or an inmate can completely bypass the institutional level and proceed directly to the Office of the FDOC Secretary by filing a "direct grievance." See Fla. Admin. Code R. 33-103.007(3). Emergency grievances and grievances of reprisal are types of "direct grievances" that may be filed with the Office of the FDOC Secretary. See Fla. Admin. Code R. 33-103.007(3)(a).

Florida Administrative Code Rule 33-103.011 provides time frames for the submission of grievances. Informal grievances must be received within twenty days from the date on which the grieved incident or action occurred. See Fla. Admin. Code R. 33-103.011(1)(a). Formal grievances must be received no later than fifteen days from the date of the response to the informal grievance. See Fla. Admin. Code R. 33-103.011(1)(b). Similarly, grievance appeals to the Office of the FDOC Secretary must be received within fifteen days from the date that the response to the formal grievance is returned to the inmate. See Fla. Admin. Code R. 33-103.011(1)(c). According to Rule 33-

10

103.014, an informal grievance, formal grievance, direct grievance, or grievance appeal "may be returned to the inmate without further processing if, following a review of the grievance, one or more . . . conditions are found to exist." Fla. Admin. Code R. 33-103.014(1). The rule provides an enumerated list as "the only reasons for returning a grievance without a response on the merits." <u>See</u> Fla. Admin. Code R. 33-103.014(1). A grievance can be returned without action if it: is untimely; "addresses more than one issue or complaint;" is "so broad, general or vague in nature that it cannot be clearly investigated, evaluated, and responded to;" is "not written legibly and cannot be clearly understood;" is a supplement to a previously-submitted grievance that has been accepted for review; does not "provide a valid reason for by-passing the previous levels of review as required or the reason provided is not acceptable;" or does not include the required attachments. <u>See</u> Fla. Admin. Code R. 33-103.014(1)(a)-(y).

### 3. Rogers' Exhaustion Efforts

With the Dixon Motion, Dixon provides records of Rogers' exhaustion efforts. Docs. 48-1; 48-2. The records show Rogers submitted a grievance to the Office of the FDOC Secretary on April 11, 2016. Doc. 48-1 at 4. His grievance stated:

I along with numerous other inmates incarcerated within the Florida Department of Corrections have been diagnose[d] with a potentially fatal liver disease known as Hepatitis C. This disease causes ongoing damage to live cells, cells that die and get replaced by scar tissue leading to another enhancement of the HVC [sic] disease. The cells that die and get replaced by scar tissue leading to cirrhosis of the liver have an additional factor to add to the potentially fatal outcome of HVC[,] cells that grow back after some are d[e]stroyed may with a great possibility lead to another fatal liver disease of cancer. Both cirrhosis and cancer add to the fatality factor of the HVC vir[us] which will often spread in blood to other body organs.

Curing Hepatitis C is now possible with new groundbreaking medical advancements. With these new medications and treatments the response rate [is] now greater than 90% in many cases, with a possibility of a re[lapse] probably less than one in 10,000.

Harvoni (ledispasuir/sofosbuvir) a non-interferon treatment is one tablet per day for 12 weeks.

Viekira Pak (ombitasvir/paritaprevir/ritonavir/dasabuvir) 4 tablets a day for 12 to 24 weeks have been approved by the FDA and are available for treatment of HVC.

Medical contractor Corizon is cutting corners on this life saving treatment to those of us who have this high potential[ly] fatal Hepatitis C disease. Therefore financial[l]y benefit[t]ing from [] the deliberate indifference of their professional integrity, responsibility, trustworthiness and accountability in their claims of "good business sense and good medical sense to the excellent preventive care — intervening early to prevent and[/]or treat conditions before they become serious and cause disease-related

12

complications," as quoted by Martha Harbin, spokeswoman for Corizon.

Due to the treatment price tag between $ 75 to 80,000 Corizon['s] refusal to approve this life saving treatment to the majority of inmates with HVC clearly shows they placed profits over their so called "good business sense and good medical sense of excellent preventive care." Leaving myself and others with the more likely scenario of HVC related complications that will lead to the fatal liver disease of cancer.

A treatment that could save the State of Florida the cost of a more extensive treatment later on that may or may not extend the life, and a treatment now that would avoid an excruciating life later on due to the acts of deliberate indifference by medical contractor Corizon for financial benefits by failure to treat a treatable life threatening disease.

Relief sought. That Corizon be required to pay for this treatment before the contract the[y] entered into with the Department of Corrections is ended. I seek treatment at the expense from profitable funds that Corizon squandered from it[s] intentional, calculated and scheming practices of financial benefits over its contract accountability to afford incarcerated persons within the Florida Department of Corrections with life saving treatment that is within their own "good business sense and good medical sense" guidelines of preventive care and treatment before conditions become serious and cause disease related complications.

Id. at 4-6. On April 29, 2016, the Office of the FDOC Secretary provided the following response:

13

> Your request for Administrative Remedy or Appeal
> has not been filed in compliance with Chapter 33-
> 103.006, Inmate Grievance Procedure. You did not
> provide this office with a copy of the formal grievance
> filed at the institutional level as required by rule or
> the reason you provided for by-passing that level of the
> grievance procedure is not acceptable.
>
> If you feel you need medical attention, contact the
> institutional medical department via the sick
> call/emergency process.
>
> Upon receipt of this response, if you are within the
> allowable time frames for processing a grievance, you
> may resubmit your grievance at your current location
> in compliance with Chapter 33-103, Inmate Grievance
> Procedure.
>
> Based on the foregoing, your appeal is returned
> without action.

Id. at 3. Rogers did not submit any other grievances concerning treatment for

his HCV until after October 2021, when he filed three informal grievances.

Doc. 14-2 at 10-12. Suwannee Correctional Institution denied the grievances,

and Rogers did not file a formal grievance or pursue an appeal. Docs. 14-1 at

1-2; 14-2 at 10-12.

### 4. <u>Turner</u> Step One

Under the first step of the <u>Turner</u> analysis, the Court must review the

allegations in the Motions and Response and accept as true Rogers' allegations.

See <u>Whatley</u>, 802 F.3d at 1209. If Rogers' allegations in the Response show a

failure to exhaust, then dismissal would be appropriate. See id. In an abundance of caution and because Dixon and Centurion make similar arguments concerning exhaustion, the Court will consider Rogers' view of the facts in his Response as directed to Dixon.

The Court now turns to the allegations in the Motions and Response concerning Rogers' exhaustion efforts. The parties seemingly agree that Rogers filed a direct grievance about treatment for his HCV in 2016. Dixon Motion at 10; Centurion Motion at 7-8; see generally Response. The Office of the FDOC Secretary returned the grievance without action for failure to comply with procedural requirements. Id. Rogers never resubmitted the grievance at the institutional level. Id. In 2021, he also filed a series of informal grievances about treatment for his HCV. Id.

Dixon and Centurion argue that Rogers did not properly exhaust administrative remedies in 2016 because he failed to comply with the FDOC's grievance procedure. Dixon Motion at 10; Centurion Motion at 8. They further contend that the 2021 grievances do not satisfy the exhaustion requirement because he submitted them after he filed the Complaint in this case. Dixon Motion at 10; Centurion Motion at 8. Rogers argues that he did not have administrative remedies available to him because of deficiencies in the

15

grievance process, including the untimely return of grievances to inmates and the failure to respond to grievances. Response at 5-6, 9-10. Accepting Rogers' view of the facts as true, the Court cannot dismiss his claims at the first step of the <u>Turner</u> analysis and will proceed to step two.

### 5. <u>Turner</u> Step Two

As dismissal would not be appropriate based on the allegations in the Motions and Response, the Court next turns to the second prong of the <u>Turner</u> analysis. Here, the Court finds Rogers had available administrative remedies that he failed to properly exhaust before filing the Complaint. Rogers grieved the denial of HCV treatment in 2016; however, the Office of the FDOC Secretary returned his grievance without action because he did not include his formal grievance as required nor did he provide a valid reason for bypassing previous levels of review. Doc. 48-1 at 3; <u>see</u> Fla. Admin. Code R. 33-103.014(1)(f)-(g). Rogers did not file any other grievances concerning the denial of HCV treatment before filing this lawsuit.[10] "Proper exhaustion demands

---

[10] While Rogers filed multiple grievances concerning the denial of HCV treatment <u>after</u> he filed the Complaint in June 2020, <u>see</u> Doc. 48-2 at 10-12, "an inmate alleging harm suffered from prison conditions must file a grievance and exhaust the remedies available under that procedure <u>before</u> pursuing a § 1983 lawsuit." <u>Brown v. Sikes</u>, 212 F.3d 1205, 1207 (11th Cir. 2000) (emphasis added). Accordingly, those grievances are not pertinent to the Court's determination of whether Rogers satisfied the PLRA's exhaustion requirement. <u>See</u> <u>Smith v. Terry</u>, 491 F. App'x 81, 83 (11th Cir. 2012).

compliance with an agency's deadlines and other critical procedural rules." Woodford, 548 U.S. at 90. Therefore, Rogers did not properly exhaust his administrative remedies where his grievance failed to comply with FDOC procedural requirements.

While Rogers alleges that FDOC officials would not respond to grievances in a timely manner or would not render a decision, a failure to respond does not render the grievance process unavailable. FDOC's grievance procedure provided that "he could have 'proceed[ed] to the next step of the grievance process' – administrative appeal – after the expiration of the 20 days." Pavao v. Sims, 679 F. App'x 819, 825-26 (11th Cir. 2017) (quoting Fla. Admin. Code R. 33-103.011(3), (4)). "Because [Plaintiff] could have proceeded by filing an administrative appeal, the PLRA still requires him to file an appeal notwithstanding the prison's lack of response." Id. at 826 (citing Turner, 541 F.3d at 1084).

Rogers also refers to a "cell trashing" incident when prison officials destroyed his legal documents. If he contends the event constituted retaliation and rendered his administrative remedies unavailable, his argument is not persuasive. The incident presumably occurred after Rogers filed the Complaint because he alleges officials destroyed his legal documents from the instant case

17

"and all his grievances that were filed in [this] case were also confiscated by staff." Response at 7. Indeed, because the event occurred after he filed the Complaint, it could not have hindered his ability to properly exhaust administrative remedies <u>before</u> filing suit. Moreover, the grievance procedure was available to Rogers before June 2020 since he filed numerous grievances in January 2016, May 2018, October 2018, and February 2019. Doc. 48-2 at 1-4, 14. As such, the Court finds the above-described incident did not prevent Rogers from exhausting his administrative remedies before he filed this lawsuit.

To the extent Rogers requests an evidentiary hearing, the Court will not conduct a hearing. Here, Dixon submitted Rogers' grievance records as an exhibit to the Dixon Motion. <u>See</u> Docs. 48-1; 48-2. Rogers does not dispute the accuracy of these records. Nevertheless, he requests a "pretrial hearing . . . to gain the documents he will need from other inmates that will clearly show the violations of the Defendants of the grievance process." Response at 5, 9. Because the Court need not resolve a material question of fact, an evidentiary hearing is not warranted. <u>See</u> <u>Bryant</u>, 530 F.3d 1368, 1377 n.16 (noting that "in the absence of a timely request for an evidentiary hearing and where the resulting order is to be a dismissal without prejudice, a district court may

18

resolve <u>material</u> questions of fact on submitted papers") (emphasis added). Rogers neither alleges that he attached his formal grievance to the 2016 administrative appeal nor that before June 2020, he refiled a grievance at the institutional level concerning the denial of HCV treatment. Similarly, he does not allege any specific threats or actions of reprisal that occurred before he filed suit. His general request for a pretrial hearing is not of the sort contemplated by <u>Bryant</u>. <u>See</u> <u>McIlwain v. Burnside</u>, 830 F. App'x 606, 611 (11th Cir. 2020) (finding that the district court did not give McIlwain an opportunity to develop the record where he "requested an evidentiary hearing to compare the tear marks on his receipt with those on the original grievance form so that he could rebut the defendants' allegation of forgery"). Accordingly, the Court finds Rogers had available administrative remedies, and he failed to properly exhaust the claims against Dixon and Centurion. Based on the above, Dixon and Centurion's Motions are due to be granted on that basis.

### B. Dixon and Centurion's Remaining Arguments

Because all of Rogers' claims are due to be dismissed for failure to satisfy the PLRA's exhaustion requirement, the Court declines to address Dixon and Centurion's remaining arguments. Therefore, as to these issues, the Motions are due to be denied without prejudice.

## C. Corizon's Suggestion of Bankruptcy

On February 17, 2023, Corizon filed a Suggestion of Bankruptcy (Doc. 70), notifying the Court that Tehum Care Services, Inc., formerly known as Corizon, filed a Chapter 11 bankruptcy petition in the United States District Court for the Southern District of Texas. The filing of a bankruptcy petition operates as a stay of "the commencement or continuation . . . of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the [bankruptcy] case . . . ." 11 U.S.C. § 362(a)(1). The stay is generally limited to debtors and does not extend to non-bankrupt co-defendants. See Wedgeworth v. Fibreboard Corp., 706 F.2d 541, 544 (5th Cir. 1983); Am. Prairie Constr. Co. v. Hoich, 560 F.3d 780, 789 (8th Cir. 2009). Here, in accordance with 11 U.S.C. § 362(a), the Court will stay the case as to Corizon.

Accordingly, it is now

**ORDERED AND ADJUDGED:**

1.      Defendants Dixon and Centurion's Motions to Dismiss (Docs. 48, 55) are **GRANTED** to the extent Defendants seek dismissal for Rogers' failure to exhaust his administrative remedies. In all other respects, the Motions are denied without prejudice.

2.      Plaintiff Joseph Rogers' claims against Dixon and Centurion are **DISMISSED WITHOUT PREJUDICE**. The Court **directs the Clerk** to terminate Dixon and Centurion as Defendants in the case.

3.      The Court will stay and administratively close the case pursuant to 11 U.S.C. § 362(a). Corizon shall file a status report with the Court on **June 21, 2023**, and **every 120 days thereafter**, reflecting the status of Corizon's bankruptcy proceedings. The Court **directs the Clerk** to administratively close this case.

**DONE AND ORDERED** at Jacksonville, Florida, this 1st day of March, 2023.

**MARCIA MORALES HOWARD**
United States District Judge

Jax-9 2/13
C:     Joseph Rogers
        Counsel of record